The court now calls cases 117-638, 117-713, 117-728. Jerry Matthews et al. v. Chicago Transit Authority. Retirement plan for Chicago Transit Authority employees et al. Are you ready to proceed? Note that you're going to split your time. I trust you've worked that out between the two of you. We have. Proceed. Good morning, Your Honors. Good morning. Tim Meaton on behalf of the CTA. May it please the Court. This case involves a collective bargaining agreement, which includes a retirement plan negotiated by local unions, ATU 241 and 308, on behalf of the retirement plan participants in the CTA. The retirement plan agreement clearly provides that pension benefits in Section 11 of the plan are vested, and all other contract provisions like health care benefits are subject to modification. I will be splitting my time evenly with counsel for the retirement plan and trust, and I will be addressing why this retirement plan agreement did not provide for health care benefits to vest. And since the contract did not provide for vesting, and it provided for who should pay those benefits, why plaintiffs count on promissory estoppel also fails. Counsel for the plan and trust will address the origin of the erroneous vesting presumption that the appellate court used, and why it has since been discarded by the U.S. Supreme Court. He will also address why plaintiffs do not have standing in this case. The language of the agreement, as I said earlier, is clear and unambiguous in expressing the intent of both the unions and the CTA as to vesting of pension benefits. But by the absence of any vesting language that the health care benefits, like any other contracts, they are subject to modification in later agreements. Section 11 of the agreement clearly states that pension benefits vest. This court last week in Heaton, at paragraph 71, stated that there are numerous instances in the Constitution of 1970 where the drafters civically provided the particular constitutional guarantees were to remain subject to the authority of the state where public safety and welfare were required. When it came time to address the rights conferred by membership in public pension systems, however, this court pointed out, the drafters included no similar reservation of authority. So this court found that there was no protection under the police power. Likewise, here, the drafters, in a collective bargaining context, knew how to vest pension benefits and they did so. And again, there is no language with respect to health care benefits. But the appellate court, even before reviewing the terms of the agreement, decided to use an initial presumption, rather than well-settled contract principles as this court did in Heaton, to determine what the party's intent was as to vesting. The presumption that they applied required the parties to state affirmatively in the agreement that health care benefits did not vest, otherwise the appellate court would find, absent this language, that they did. This presumption completely turned well-settled contract principles on its head. And it was a presumption that was not even in effect in Illinois when the parties negotiated the collective bargaining agreement, which includes the retirement agreement. Therefore, the parties negotiating the retirement plan agreement had no way of knowing what additional language to include or not to include under existing law. They followed existing law. Existing law at that time was the four, you look to the four corners of the agreement to determine the party's intent if the language is unambiguous, particularly where there's an integration clause as it was here. And unless stated otherwise, it has been held numerous times by this court, U.S. Supreme Court, that contractual obligations do not survive beyond the expiration of the collective bargaining agreement. Courts should not construe language in a contract to create lifetime benefits unless the language is clear. These are basic rules of contract interpretation, constitutional interpretation, and statutory interpretation. And if you look at the actual language of this agreement, it says in Section 20.12A that when a retiree or active employee reaches the age of 65, then they go to Part B, which is another set of benefits, because then they can take into account Medicare modified benefits. It does not provide that up until age 65, they're given a benefit that would go beyond the terms of the specific collective bargaining agreement. And if that wasn't clear enough, if you look at other provisions of that contract, if you look at the whole agreement, it makes it even clearer what the party's intended. Because in Section 11, which I mentioned earlier, pension benefits, the word vesting is mentioned. I also mentioned in Section 21.1, which talks about when that fund is distributed ultimately, it says precisely in 21.1, it is the intent of the parties to maintain old age retirement plan permanently, no reference to health care benefits. Section 23.1 and 19.2 of the collective bargaining agreement says that the terms of the agreement are subject to modification. That is clear. Plaintiffs suggest that the appellate court's presumption is likely consistent with the original intent of the parties. But again, no presumption is necessary where the language and the intent of the parties is unambiguous. Obviously, this court's recent rulings on the Pension Protection Clause in both Canova and Heaton need to be addressed. And what I will say about that briefly, because counsel will also be addressing that, is what this court said, and I think what this court made clear, is that the Pension Protection Clause protects the contract that the parties entered into. Nothing more, nothing less. It does not change that contract. This court said in footnote 12 in that decision that they would not allow the unilateral taking away by the legislature of benefits that had been vested between the parties. This is not a unilateral taking away. This is a collective bargaining agreement. And I think as this court said in Kerner in its commentary to Section 5, of course the contractual relationship referred to in Section 5 is governed by the actual terms of the contract. Plaintiff does not explain how enforcement of this condition to which the parties agreed and which has existed throughout the duration of the contract can become an unconstitutional impairment of that contract. Contracting parties have and expect to have their contracts interpreted and enforced as written. Finally, Your Honors, I do want to address the claim of promissory estoppel, which plaintiffs have alleged is a fallback in their complaint against the CTA. They are suggesting that somehow the CTA is a stop from denying that it owes these benefits because over the years there have been made certain promises that have been made that they would be entitled to this. This court made it clear in Patrick Engineering v. City of Naperville that to apply promissory estoppel against the municipality, that there have to be extraordinary and compelling circumstances. And without going through, as we did in our brief, the flaws in the complaint with respect to promissory estoppel, let me say just this. Promissory estoppel is going to fail when there's a clear contract in place, a clear contract that says it's the responsibility of the retirement plan to pay those benefits, and a clear contract that says you are only entitled to this much subject to modification. So we would respectfully ask that this court affirm the circuit court and dismiss this entire complaint with prejudice. Thank you. Alex Veselinovich. May it please the court, good morning. My name is Alex Veselinovich, and I'm one of the attorneys for the defendants, the retirement plan of the CTA employees, the retiree health care trust, and the boards of those two entities. This case raises and has some important themes that arise from it. And the first we submit is whether the appellate court in this case committed, as we would submit, reversible error when it interpreted the contracts at issue here, including a collective bargaining agreement, by applying a faulty and rejected presumption in favor of vesting retiree health benefits in the collective bargaining agreement. Another issue that arises generally is whether collective bargaining still exists in Illinois and can be used as a vehicle for the modification of retiree health care benefits. Another one that seems to lurk throughout the briefing and tone of this case is whether employees who do choose to receive retiree health benefits as a result of collective bargaining can accept all those benefits that accrue, but then individually choose to reject the limitations that were placed in those benefits and bring lawsuits like this one. I won't repeat what my colleague Mr. Eaton said about the contract, but the contract he was correct in saying and the trial court was correct in finding that the contract was unambiguous and is unambiguous. Certainly with respect to whether or not the retiree health benefits in this case were vested, the most glaring error we submit of the appellate court's analysis is its application of a presumption in favor of vesting the retiree health benefits when it interpreted the collective bargaining agreement and the related retirement plan agreement. It tainted the entire analysis of the appellate court, and it led to its conclusion, a wrong conclusion, that there was a viable breach of contract claim and a constitutional claim. The trial court basically read the agreements here without that presumption and found that the language here did not vest any retiree health benefits. The contract was clear. The appellate court read the same contracts but presumed they had vested, and it did so largely following the reasoning of another appellate court decision called Marconi, which applied a presumption again in favor of vesting. And only because it applied that presumption in favor of vesting could the appellate court rule that there was a breach of contract and for possible constitutional violation. If you follow where these cases are getting, this presumption in favor of vesting and you follow it down, Marconi got it from a Wisconsin Supreme Court case called Roth. Roth followed a concurrence in a federal case called Bidlack, and that concurrence was rested on a Sixth Circuit case called Yardman. All of these presumptions that favor vesting for retiree health care benefits come from the same source, and that's the Sixth Circuit's decision in Yardman. That doctrine, that presumption in favor of vesting, has been unanimously rejected and renounced by the U.S. Supreme Court in its recent decision of M&G Polymers. It just came out during the course of the briefing in this case. Justice Thomas wrote for the majority in the U.S. Supreme Court, and Justice Ginsburg wrote for the concurrence. There wasn't a single dissent in that case, and they all concurred and agreed that there was no presumption, and no presumption in favor of vesting of retiree health care benefits should be applied by any court when it interprets or construes a collective bargaining agreement. In creating such a presumption, the U.S. Supreme Court basically overturned the Yardman doctrine entirely, and that's why any case, whether it's state or federal, that is based upon the reasoning of that Yardman doctrine is now following bad law. We're not really blaming, really, I don't want to be too harsh on the appellate court, because at the time it ruled, it didn't have the benefit of the Polymers case. At the time it ruled, it didn't know that the U.S. Supreme Court was going to unanimously reject that doctrine. And Polymers, by the way, we would submit, is not limited to federal or ERISA law. It bases holdings on ordinary contract principles. The cases it cited itself were contractual interpretation cases, like the Stoltz-Nielsen case it relied on. It wasn't an ERISA case at all. It was an arbitration clause. So we would submit that the Polymers presumption, which has now rejected Yardman, applies to general contract cases like this one. Yardman has seeped into Illinois law through Marconi and now through the appellate court here, and it should be swept away. And this court has the right to do that. With respect to the contract, I don't want to repeat my colleagues' comments with the contract, but I want to make a couple of additional points. When the parties here wanted to vest rights, they knew how to do it. They vested the pension annuities in Section 11 of the Retirement Plan Agreement. How many times in that section did they use the word vest? I counted. Ten. They vested these rights repeatedly in Section 11 for pension annuities. When they talk about retiree health benefits, how many times did they use the word vest in Section 20? Not one. There's no reference to it. And the trial court, and even the appellate court, looked to a Seventh Circuit case called Rockford Powertrain for instruction, and in that case there was a reservation of rights clauses that the Seventh Circuit was interpreting. And this case is analogous because the reservation of rights clauses here, all through the contracts, particularly in Section 19-2 of the Collective Partying Agreement, Section 23-1 of the Retirement Plan Agreement, has a general reservation of rights that allows modification if the parties go to the table and want to modify or change benefits. That kind of reservation of rights clause was viewed favorably by the Seventh Circuit for vesting there for either, in that case, life insurance benefits or health insurance benefits. I'd like to talk about, if I could, the pension clause, too. This appellate court in this decision did not address the pension clause issue because it said since it determined that their rights were vested pursuant to the language of the Collective Partying Agreements and the Retirement Plan, the appellate court said we have no need to consider whether the Illinois Constitution also provides them with a vested right. Well, if this court chooses to go into the constitutional issue, as the plaintiffs are inviting it to do so, the previous decisions of this court are instructive. They're very helpful. The Kerner case. In that case, this court held that membership and retirement systems is an enforceable contractual relationship. Kenerva recognized that the pension clause mandates a contractual relationship between the employer and employee. Kerner also said in this case, in that case, that the contractual relationship is governed by the actual terms of the contract or pension, citing to the commentary to the Constitution. Here, what is that contract? That is the Retirement Plan Agreement. Bedell is a very instructive case, we would submit, in which this court said the plaintiff's rights became contractual in nature and cannot be altered, modified, or released, except in accordance with usual contract principles. That's still good law. It should still be upheld, and that means that the court considers the constitutional issue. The pension clause here doesn't preclude any modification of retired health care benefits when those changes are made through ordinary contract principles. Here, what do we have? We have all plaintiffs. Concede they were always members of the retirement system that was governed by the Retirement Plan Agreement. Everyone here agrees there was a contract. Everyone here agrees it was valid, and everyone here agrees it governed the retirement system of which every plaintiff was participating. These retirement health care benefits could be altered or modified under the terms of the Retirement Plan Agreement through collective bargaining, and that's what happened. All the plaintiff's claims here arise from the collective bargaining agreement and the related Retirement Plan Agreement, and all the modifications that were made here were done in accordance with collective bargaining, in accordance with the provisions of those contracts, and with the full assent of the parties. The Benn Arbitration Award was agreed to by the parties. The Memorandum of Understanding in November 2007 was agreed to by the parties, and the act at issue 95708 expressly acknowledged the existence of the Memorandum of Understanding, which in turn acknowledged that there was no intent here to diminish or impair anyone's rights at all. The parties had come to the table just as they're supposed to under collective bargaining. As this court held in Bedell, the plaintiff's retiree health benefits were altered and modified in accord with usual contract principles. Counsel, let me ask you a question. I'm over here. Your time's running out, and I don't remember. This is a big stack of papers here. I think last week on May 6th is when the SIR reply brief was filed by your opponents, and I just haven't kept up with this. I don't know if you've ever written. I don't know that we want any more responses, but they argued pretty strenuously that this case begs strongly for a remand on these factual issues that are still in controversy, that we shouldn't be ruling as a matter of law. I mean, I'm not sure that Mr. Eaton addressed that, and I don't know if you were going to. I just wanted to throw that question out there. Or is there a brief I need to be looking at that answers that? Yeah. Justice Kilbride, you're correct. That was the last brief filed in the case, and it was supposed to be the last brief filed in the case. I think my response to your question would be that there is really no need for and that the retiree health benefits were not vested by the agreements here. That could be the beginning and end of the story. I haven't addressed, though, we have in the briefs that the current active employees, by the way, also lack standing for the reasons enunciated by the appellate court and the trial court. But I know my time is up. What I'd like to say is I will concede this, that if there is a finding made by the court, which we don't think is necessary, that the contract is ambiguous, and these collective bargaining agreements are ambiguous, then probably in that case a remand would be appropriate for evidentiary findings and a fuller evidentiary record. But there's no need to get to that point, A, if there's no standing, or B, if there's a finding that the contract is unambiguous, as the trial court found. Thank you very much. Thank you. Chief Justice Garment, and may it please the court, my name is George Luscombe, representing the plaintiffs,  plaintiffs respectfully request this court to hold that all plaintiffs, retirees, and current employees have standing in court to defend their constitutionally protected and vested retirement system benefits, and that this court should also hold that all the plaintiffs hired on or before September 5th, 2001, have a vested right to a paid health benefit in the CTA health plans as part of the CTA retirement system, and that this court should remand all plaintiffs' claims on appeal against each of the defendants for discovery and further proceedings. Two straightforward considerations require this result. First, the collective bargaining agreement here defines the terms of one of the Illinois retirement systems, and therefore the pension clause is relevant to this case. And particularly in light of this court's decision last week in the pension reform litigation decision, it is clear that because a paid health benefit was part of the retirement system here for some 30 years, it could not be diminished or impaired as it was here through legislation or through collective bargaining without the knowing consent of the individual retirement system participants. Contrary to defendants' position, there was a unilateral reduction here. There could only be a modification of that vested retirement system benefit by the bilateral agreement of the individual retirement system participant deciding to weigh their own individual vested deferred compensation and their own constitutional right. Second, the current employees, just like the retirees, must have standing if they are to have an enforceable constitutional right to their retirement system benefits. Plaintiffs cannot be left without a forum that has the authority and power to diminishment of their retirement system benefit here. Are you saying that the agreement could waive the rights, but there had to be individual participation in the agreement? Yes, Your Honor. I think as multiple cases in our brief poll, even a collective bargaining, even in the private sector when there aren't constitutional rights involved, a collective bargaining representative and a public employer can create vested rights through collective bargaining. But once those vested rights are created, they become the individual right of the employee, and therefore those vested rights then are no longer subject to be weighed through the collective bargaining process. So a subsequent collective bargaining agreement would have no effect on the original agreement? For the current participants who already had a vested right, so consistent with the pension clause, if a collective bargaining agreement that defined the terms of the retirement system created that vested benefit, it would be vested for the current participant. They would have a vested right to the pensions detailed in that collective bargaining agreement and the retiree health benefits, the disability benefits, any other terms that were part of the retirement system here in the retirement plan agreement. And those benefits could not be subsequently diminished through collective bargaining or through, as here, ultimately, it was cut through legislative action. And here, of course, it bears noting that even further, the cuts that occurred here happened, you know, the genesis was an interest arbitration that no member got a vote on, and then subsequently by legislation. So there isn't even facts that could be relevant, such as people giving an individual waiver of their benefit. That just has not occurred here. Mr. Luscombe, how does the vitality of the Shardman Doctrine argument that was just pointed out and argued by counsel, how does that weigh in on your response to Justice Carmeier? I think the critical distinction here is that this is a collective bargaining agreement defining the terms of an Illinois retirement system. It's not a private collective bargaining agreement in the public sector. A critical necessary piece of the M&G Palmer's decision is the fact that in the private sector, there's an absence of any background law vesting retirement benefits. In the private sector, under ERISA, pension benefits are vested. Therefore, if a collective bargaining agreement includes pensions, there's no need at all for the collective bargaining agreement to say that the pension is vested, because it is under ERISA. But that's not so for retiree health benefits. Therefore, as the Supreme Court held, the collective bargaining agreement has to express some kind of intent to vest those benefits if they're to survive the expiration of the collective bargaining agreement. But here, as the court's Kenurba decision made clear, the clear and unambiguous terms of the pension clause show that the voters of Illinois decided that vesting protection should extend to all the benefits of a retirement system. Therefore, for a collective bargaining agreement that defines the terms of an Illinois retirement system, background law, the pension clause, says that both the pension and the retiree health benefit vest. And therefore, there's actually no independent need at all for the collective bargaining agreement to express an intent to vest. And even though the appellate court below in the Marconi decision relied on other considerations for applying the presumption, I think the pension clause and the vesting rules under the pension clause are fundamentally the reason why that presumption makes sense here. In addition to that point, I would note that unlike in the private sector, in federal jurisprudence, here in Illinois, there is a well-settled rule that any ambiguity in the terms of an Illinois retirement system should be interpreted in favor of the retirement system participant. Therefore, if there were any ambiguity in these documents, they would have to be interpreted in favor of the retirement system participant. Thus, if the CTA and the transit unions had intended to disclaim vesting of the retiree health benefit, they would have had to have done so expressly and unambiguously when that benefit was established in the terms of the retirement system. And that they simply did not do. I think these principles make clear that defendants' arguments that they were permitted to diminish or trade away plaintiff's retirement system benefits through collective bargaining are wrong. This is not a case like Kerner where the terms of the system contained an express condition where a pension would be eliminated, where the terms of the system expressly said that if you're convicted of a felony, you lose your right to a pension. Here, they rely simply on provisions that allow the CTA and the transit unions to amend the terms of the collective bargaining agreement through collective bargaining. But I think that's no different than the standard power of the General Assembly. If this were a purely statutory system, the General Assembly always retains the power to amend and modify the terms of the retirement systems through amendments to the pension code. But the Constitution places a limit on that power. They cannot amend and modify the terms of the pension code so as to I think the decision last week in the pension reform litigation made clear that the pension clause protects the contractual relationship, but it also makes clear what the protections are for the benefits of that system, that they may not be diminished or impaired. And I don't think the decision can be any different in the CTA retirement plan. In that plan, the General Assembly granted the CTA the power to amend or modify the terms of the system, including through collective bargaining. But the Constitution necessarily places the same limit on that power. The CTA may collectively bargain to modify the terms of the system in any way that does not diminish or impair the benefits of current participants. I think those constitutional principles, which are consistent with the labor law principles that a collective bargaining agreement agent cannot waive the vested rights of individuals, makes annuities and health benefits, retirement system benefits in a collective bargaining agreement, fundamentally different from the other terms and conditions in a collective bargaining agreement, like wage scales, that can be modified. Thus, even if the diminishment of benefits here were accomplished purely through collective bargaining, it would still be an unconstitutional and ultra-virus action of the union. Moreover, in addition to the principle that a collective bargaining agent cannot diminish, cannot bargain away, trade away the vested rights of participants, the rule here that a collective bargaining agent cannot bargain away the pension clause rights of its participants,  knowing consent of the individual affected. What role does consideration have to do in this? I know it's in your briefs, and I know there's a slightly different argument between the active participants and those that aren't active, but it would seem that collective bargaining, the nature of it being you get some rights, you give some rights. So what about the role of consideration? I think the law that we cite in our brief shows that a union can bargain to grant benefits, a union and employer can bargain to grant benefits, but that power does not give them the representational capacity to bargain away already vested benefits, and that would be particularly true here when it's a constitutional right involved. And so therefore, I think in a contractual analysis, if there really were a bilateral negotiation agreement going on here where the individual was involved and the individual was able to bargain or make the decision about their consideration, and was that consideration valid, that could be a different case, but that's not the case here. And I would absolutely note, and this would go to Justice Kilbride's question earlier, the consideration that the defendants propose in this case I think is unambiguously insufficient, even if it was appropriate to consider, and absolutely that would be a factual issue for remand. There's no factual record here as to even what all those benefits were. And I'll note that the defendants do in their brief cite New York City court cases under New York's pension clause that do suggest that a collective bargaining agent could bargain away the constitutional rights and vested benefits of the members it represents. Importantly, only the members the unions represent, not retirees they don't represent or not employees not in their bargaining units, but because those cases fail to even acknowledge, let alone distinguish the rules that a bargaining agent cannot trade away the vested rights of their members, and should not be allowed to bargain away the constitutional rights without the individual consent of the members, I think those New York cases just got that wrong. In fact, in the Shack case, the dissent in that case was correct. And further, because the immediate vesting under the pension clause, there is no need for the collective bargaining agreements to independently express an intent to vest. But nonetheless, I think the agreements here do express that intent as the appellate court recognized. Section 20.12A expressly states that this benefit terminates when the retiree attains age 65, not when the collective bargaining agreement expires. And then when you read that with Section 20.12C of the retirement plan agreement, which defendants ignore, that provision expressly states, expressly makes eligibility for the benefit based on the hire date. Every employee and retiree hired before September 5, 2001 will be eligible for the benefit. That's interestingly very consistent with the vesting rules under the pension clause, that when that provision was added to the contract, it eliminated the retiree health benefit only for new hires. And defendants' interpretation would not only leave that provision illusory, it would actually make it absolutely meaningless. If the retiree health benefit here expired within two years at the end of the term of that contract, it would be absolutely, have no meaning that a new hire hired on September 5, 2001 would be eligible for the benefit because they could not possibly receive that benefit before they retire. Not to mention it just is inconceivable that that's what the parties would have intended, that thousands of CTA employees hired before that date who could not possibly retire before the expiration of the collective bargaining agreement would not be entitled to those benefits. And the Article 11 deferred vested old age pension that defendants relied on in their presentation here, I don't think changes the decision. That's the only provision that uses vesting. And that Section 11 section, as the appellate court recognized, actually makes sense that it used the word vest because it was referring to only the situation where an employee, after 10 years of service, but is too young to meet the age requirement for retirement, they are vested for this deferred vested old age retirement allowance so that they know that come when they turn 65, 30 years later, they're still entitled to that benefit. But as that provision makes clear, you get that benefit when you're not age eligible pursuant to the Section 8 normal retirement date pension, the Section 10 early retirement pension, or the Section 12 disability pension. None of those other pensions reuse the word vesting. And as even the federal cases make clear, you don't have to use the word vest to show an intent for the retired health benefit to extend beyond the term of the collective bargaining agreement. So the appellate court correctly considered each of those provisions, and I'll note that as the appellate court's reliance on the Hockey decision shows, that even without the presumption that we think is correct, even without considering the pension clause principles that we think this do show that intent to vest. Turning to standing, the constitutional protection for retirement benefits here is also why all the plaintiffs must have standing. We detail in our briefs the reasons why a duty of fair rep claim is not necessary because our claims are not subject to a mandatory arbitration clause, but one simple fact above all other makes it necessary for the plaintiffs to have standing. The CTA did not simply make these changes through collective bargaining, but ultimately the General Assembly enacted the cuts through Public Act 95708. Therefore, plaintiffs can restore their retiree health benefit to the status quo ante only with the courts passing on the constitutionality of the act. Any other procedure would be futile. I'll also remind the court that their arguments would apply to the pension annuities as well. If the plaintiffs don't have standing here to protect the retiree health benefit, they would not have standing to protect their pensions at all because they're detailed in the very same collective bargaining agreement and established through collective bargaining. The transit unions could bargain to eliminate their pensions entirely, and they would have no standing in court. And a union's discretion to choose to defend or not to defend the rights of their members to retirement system benefits cannot substitute for an arbitration, because the unions, as here, might choose that other interests of their membership were more important than the constitutional rights or vested retirement system benefits of other of their members. Mr. Leskum, do these CTA contracts, once they're negotiated, are they subject to a union ratification vote? Yes, they'd be subject to a union ratification vote, but often, as in the case, as in this case, they're imposed through interest arbitration. But these that are at issue are not subject to a? That's correct, Your Honor. The Benn Award is what made the change to the retiree health benefit here, and even that memorandum of understanding that we think creates factual disputes and cannot be a basis for a decision on a motion to dismiss, that certainly, it's certainly not in the record, and I certainly believe it's true, was not at all subject to any ratification by the members. But just to follow your argument, if I understand it, what you're saying, at least on these constitutionally, what you say are constitutionally protected rights, it would take the end of, if it involves 10,000 employees, CTA, active and retired, you would be looking for 10,000 separate ratifications? I mean, to approve what the union negotiated, is that what you're saying? Correct, Your Honor, and I don't even think just a simple vote on the contract would be sufficient. No, I'm talking about a specific ratification on this benefit, yay or nay. I think that's correct, Your Honor, that an individual would have to, in a sense, be said, given the offer, here's your individual contract waiver to change your retirement system benefit in exchange for something else that was sufficient consideration. I see my time is up. Thank you. Thank you, Your Honors. Thank you. Good morning. I've agreed to split my time with Mr. Eaton. We'll try to do that quickly. I want to respond to a few points that were raised by counsel for the plaintiffs. He kept mentioning in his terminology that these are vesting rules, that these vesting rules was his term, arise from the pension clause of the Illinois Constitution. He mentioned there was a unilateral reduction here of benefits, and he kept mentioning that these were vested rights. Well, that's the whole issue in the case. This is the issue we don't agree with at all. The pension clause, in our view, doesn't vest anything. The pension clause protects. It protects a contractual relationship. It mandates a contractual relationship, perhaps, between the employer and employee, but it doesn't vest retiree health benefits or anything else. What it looks to is the contract, and the contract here is a collective bargaining agreement, and it's also the retirement plan agreement, which is part of it. And the question is, under that contractual relationship, which is protected by the pension clause, what was vested? And we're submitting not retiree health benefits, and we're submitting that the trial court correctly found that they were not vested. So do we concede that pension annuities were vested in this agreement? Yes, we do, but that's not the issue in the case. The whole issue in the case revolves around, and solely revolves around their rights to retiree health benefits. I'd like to respond to the point that this was a unilateral reduction. It was not unilateral. At every step of the way, the parties to the collective bargaining agreement agreed with everything that was done. First, they agreed with the terms of the Benn Award, and the Benn Award said so. Second, in order, they agreed to a memorandum of understanding, and that memorandum of understanding is worth reading. It's not very long, but they make clear there that they're not intending, and nothing they're doing is intended to impair or reduce anyone's rights under their pension rights. If they thought things were vested, why would they read such a memorandum of understanding saying that to begin with? What's really interesting, I think, and possibly unique about this statute that's at issue, 95708, is it openly refers to the memorandum of understanding that I'm talking about. And the legislation recognizes that the parties to the CBA agreed to these terms through collective bargaining, and that's why it's adopting it and referencing it. I don't know how many statutes expressly refer to memorandum of understanding like this one does. This is not a unilateral edict or something coming from above. This is something that was negotiated by the parties to the collective bargaining agreement. There were some comments made about what's the scope of the M.G. Palmer's case. If you read that case, especially the concurring opinion, it's not limited or there's no distinction between public and private sectors as they want to draw. This is a very broad doctrine that Palmers is putting out for courts that all courts should be applying ordinary contract principles shorn of any presumptions to determine whether retiree health care benefits are vested or not in a collective bargaining agreement. It's that broad, public sector, private sector. And also, it is a case that has roundly and squarely reversed the federal doctrine that's been adopted by this appellate court. And this appellate court, you don't have to go through the indirect route where they relied in Marconi. Marconi relied in Roth. This appellate court's decision itself cited Yardley. And so it was explicit. There was just mention of the Hakey case in the Illinois appellate courts. Hakey was a case that didn't even address the pension clause. It didn't come up. Nothing. There was a question about consideration here. And there was an argument made that it was insufficient. The consideration here involved a cap on the premiums that the retirees would pay, a $2.5 million one-time infusion, over $500 million of capital infusion. I understand that. When you say $2.5 million infusion, what do you mean? That was a one-time payment for the retirees in the aggregate. To whom? For the retirees. Was it to the fund or was it individually to the retirees? I believe it's to the fund for the retiree health care benefits designated for that. I'm not entirely sure if that's the case, but I believe that's what it was. Maybe when I asked the question, I don't think it was really clear in your briefs what that $2.5 million was. It was a one-time payment for retiree health care benefits, and exactly how it was distributed is not clear to me. But anyway, I don't want to take all my time, but we would ask for the reasons we also submit in the briefs that the appellate court decision be reversed in the way that we submitted, but that it also be affirmed in finding that there's no standing for the current employees, active employees on any of these claims. Thank you. Your Honors, in the brief time that I have left in the rebuttal, let me begin by again quoting Delegate Kinney. She's gotten a lot of press lately. But she said, with respect to the Pension Protection Clause, and she was the sponsor, Mr. Green and I did discuss the term vesting with Mr. Cantor, the Counsel to the Committee on Style and Drafting, and we thought it would be quite fair if a person undertook employment with a statute that provided for a contingency for lowering the benefits some future time, that this was indeed the contract he had accepted. These benefits were contingent upon being modified at some future time. The Pension Protection Clause never intended to change the contract. It intended to protect the contract that the parties entered into. So what we're dealing with here is, number one, these provisions were not vested. That's the contract. Pension benefits were, health care benefits were not. So it begs the question to say that the Pension Protection Clause affects a contract where the benefits in question were not vested in the first place, and that clause does not provide for a vesting mechanism. Also, I might add, Counsel said, well, at any time now, there would be no standing to challenge the pension benefits. I think now the legislature, through that act, has vested again those pension benefits, and that cannot be challenged. Also, Justice Kilgore, in response to your question, I believe we heard that each individual person would have to give their consent. Last week this Court dealt with a situation where there were 40,000 state employees. Is that what we want to hold, that you cannot any longer rely upon the unions to represent those individuals in a collective bargaining context? If that's going to be the law, there's going to be chaos when you're talking about 40,000, 10,000, 5,000. They were represented as members of the retirement plan. It was a give and take, and there was consideration. Justice Thomas, you raised it. Justice Tice, you raised that as well. The 2.5 actually goes to the retirees, and there was also a billion-dollar bonds issued to shore up the pension part and a half a billion dollars to shore up the health care benefits. That was the deal that these parties agreed to, and now they're trying to get out of it individually despite the fact that they represent it. So we believe that if this Court decides and agrees with us, as the Circuit Court did without a presumption, that that agreement did not provide for vested health care benefits, then that's it. The case is over. There does not need to be a remand. The contract is cleared, and we respectfully request that the Circuit Court in all respects be affirmed. Thank you. Thank you. Cases 117638, 117713, and 117728, Jerry Matthews et al. v. Chicago Transit Authority et al., will be taken under advisement as Agenda Number 11. Mr. Eden and Mr. Veselinovich and Mr. Leskum, thank you very much for your arguments this morning. You are excused at this time.